UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLISA STOVER, *on behalf of E.L.*

                                                              Plaintiff,

v.                                                                                                                   1:04-CV-1467
                                                                                                                 (NAM/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                                               Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| EMPIRE JUSTICE CENTER<br>Counsel for Plaintiff<br>119 Washington Avenue, 2nd Floor<br>Albany, New York 12210 | LOUISE MARIE TARANTINO, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>   Northern District of New York<br>Counsel for Defendant<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.  For the reasons discussed below, I recommend that the matter be

remanded to the Commissioner for further proceedings.

**I.     BACKGROUND**

    **A.     Procedural History**

Plaintiff applied for Supplemental Security Income on behalf of her son, E.L., on May 9, 2001. (Administrative Transcript ("T") at 28-29.) The application was denied on June 21, 2001. (T. at 32-35.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 25-25.) The hearing was held on January 9, 2002. (T. at 214-247.) On June 28, 2002, the ALJ issued a decision finding that E.L. was not disabled. (T. at 10-19.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 21, 2004. (T. at 3-5.) Plaintiff commenced this action on December 17, 2004. (Dkt. No. 1.)

    **B.     The Contentions**

Plaintiff makes the following claims:

(1)    Defendant erred by finding that E.L.'s condition did not meet an impairment listed in the Listing of Impairments. (Dkt. No. 11 at 20-22.)

(2)    Defendant erred by finding that E.L.'s condition did not functionally equal a Listing. (Dkt. No. 11 at 22-25.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed. (Dkt. No. 16.)

I will discuss only Plaintiff's first contention, as it is dispositive.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a three-step sequential analysis to determine whether a child was eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." Id. at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment meets, medically equals, or functionally equals a disability listed in the regulatory "Listing of Impairments." Id. at § 416.924(d).

In order to show that an impairment matches a Listing, the claimant must show that his or her impairment meets all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  In order to determine whether a claimant "functionally equals" a Listing:

> The ALJ must examine the evidence of record and determine a child's level of functioning in "six domains." The six domains are: acquiring and using information; attending and completing tasks; interacting

>and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two of the domains or an "extreme" limitation in one domain, then his impairments will "functionally equal" the Listings, and he will be found disabled. 20 C.F.R. § 416.926a(d).

*White ex rel. Johnson v. Barnhart,* 409 F. Supp. 2d 205, 207 -208 (W.D.N.Y.2006).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.   THE CHILD**

E.L. is currently fourteen years old. At the time of the hearing before the ALJ, he was eight years old. (T. at 28.) Plaintiff alleges that E.L. is disabled due to Attention Deficit Hyperactive Disorder ("ADHD"). (T. at 36.)

**IV.   THE ALJ'S DECISION**

The ALJ found that (1) Plaintiff had not engaged in any substantial gainful activity at any time pertinent to the decision; (2) Plaintiff suffers from a severe learning disability, behavior problems, and ADHD; (3) the testimony at the hearing was credible; (4) Plaintiff's severe impairments do not meet or medically equal "the requirements of a listing in the Listing of Impairments"[1]; (5) Plaintiff has less than marked impairment of his ability to acquire and use information, attend to and complete tasks, interact and relate with others and care for himself; (6) Plaintiff does not have a medically determinable physical or mental impairment (or combination

---

[1]   As discussed below, the ALJ did not specify which Listings he considered.

of impairments) which result in marked and severe functional limitations; and (7) Plaintiff is not disabled. (T. at 18-20.)

V.  **DISCUSSION**

    A.  **The ALJ's Finding That E.L.'s Condition Does Not Meet or Medically Equal The Requirements of a Listed Impairment is Not Supported By Substantial Evidence.**

Plaintiff argues that Defendant erred by failing to discuss whether E.L.'s condition meets Listing 112.11. (Dkt. No. 11 at 20-22.) Plaintiff is correct.

Listing 112.11 is the listing for ADHD. ADHD is a condition "(m)anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 112.11 (2007). In order to meet the listing, a plaintiff must meet two sets of criteria. Under the "A" criteria, the plaintiff must show "(m)edically documented findings of all three of the following: (1) marked inattention: ... (2) marked impulsiveness: and (3) marked hyperactivity." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 112.11 (2007). Under the "B" criteria, the plaintiff must show at least two of the following impairments: (1) marked impairment in age-appropriate cognitive/communicative function; (2) marked impairment in age-appropriate social functioning, (3) marked impairment in age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 112.02 and 112.11 (2007).

A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings". 20 C.F.R. § 404.1520(d) (2007). The burden is on the plaintiff to present medical findings that show that his or her impairments match a Listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6

(S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a Listing, the claimant must show that his or her impairment meets all of the specified criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  *Id*.

When evaluating whether a claimant's impairments meet or equal a Listing, the ALJ must refer to the specific criteria set forth in the Listing.  *See, e.g., Morales v. Barnhart*, 218 F. Supp 2d 450, 459-460 (S.D.N.Y. 2002).  An ALJ must set forth his or her analysis of the Listing criteria, like other "crucial factors in any determination ...with sufficient specificity to enable (a reviewing court) to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).  A reviewing court "cannot make an independent determination as to whether the record supports a finding that Plaintiff meets or equals (a Listing).  Instead ... the ALJ needs to articulate his basis for finding that Plaintiff does not meet or equal the criteria" for a particular Listing.  *Hendricks v. Commissioner of Social Security*, 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006).

Here, Plaintiff met her burden.  The record is replete with evidence of E.L's difficulties with inattention, impulsiveness, and hyperactivity, his limitations in cognitive function and social functioning, and his difficulties maintaining concentration, persistence or pace.

On April 17, 1999, Joel Redfield, Ph.D, noted that E.L. "had an extremely high activity level, was in virtually constant motion throughout the evaluation, and exhibited considerable off-task behavior.  He was engaged by test procedures, but was easily distracted, and his attention often wandered.  His style of working on tests was decidedly impulsive."  (T. at 145.)  Dr. Redfield concluded that E.L. suffered from a "mixed disorder of cognitive functioning, affecting

skills in multiple areas." (T. at 147.) Dr. Redfield further stated that E.L. "was hyperactive, impulsive, inattentive, and distractible during the evaluation, which agreed with his mother's report of behavior problems. Based on converging information from several sources, there is sufficient evidence to support a diagnosis of ADHD." (T. at 147.)

In November 1999, when E.L. was six and a half years old, School Psychologist Barbara C. Metz noted that E.L.'s "performance was affected by his tendency to rush to get it done without true attention to the task. He would become distracted by pencils on the table, something outside the window, yawning, stretching and so forth. In many ways it appeared that he was fidgety because the task was particularly difficult for (him) rather than the other way around." (T. at 99.) Dr. Metz concluded that E.L. had "exceptionally limited acquisition of skills and concepts taught in the classroom ...Achievement is that of a four to five year old in many key areas of speech and language, cognition, visual motor integration and academic skills." (T. at 100.)

E.L.'s Individualized Education Program for the 1999-2000 school year noted that he "(a)t times is frustrated and is refusing to engage in the learning process. His performance may be affected by his tendency to rush to get it done without true attention to the task. He becomes easily distracted. It appears that he may become fidgety because the task is particularly difficult for him." (T. at 93.)

E.L's Individualized Education Program for the 2000-2001 school year noted that he was "very unfocused and distractible" and had a "very short attention span." (T. at 80.) A special education classroom plus integrated work in a first grade class was found to be the least restrictive environment appropriate for E.L. (T. at 86.) This was a setback from the previous

year, when a regular classroom with resource support was found to be the least restrictive environment for E.L. (T. at 96.)

On May 8, 2001, E.L. was suspended from school for three days because he "repeatedly disregards rules and directions. He continually disrupts the class. Today his teachers had to search for him because he was hiding under the teacher's desk." (T. at 170.)

John Seltenreich, Ph.D, psychiatrically evaluated E.L. on May 25, 2001. He found that E.L.'s motor behavior was "hyperactive", that his affect was "hyper" and that his attention and concentration were "impaired because of his distractibility". Regarding cognitive functioning, Dr. Seltenreich found that E.L's "general fund of information was limited", and that his judgment was "(p)oor due to his impulsivity." (T. at 103.) Dr. Seltenreich concluded that E.L.:

> has problems attending to, following, and understanding age-appropriate directions, completing age-appropriate tasks, and maintaining appropriate social behavior ... He has problems learning in accordance to his cognitive functioning. He does not always know to ask questions and request assistance when necessary. He is not always aware of danger and the need to take precautions. He has problems interacting with peers. He has problems interacting with adults.

(T. at 104.) Dr. Seltenreich diagnosed E.L. with ADHD. (T. at 104.)

On May 30, 2001, E.L. was suspended from school for four days because he tried to hit a teacher and was throwing chairs. (T. at 169.)

On September 11, 2001, Janet Carmody, C.P.N.P. found that E.L. suffers marked limitations in personal and behavioral development functions and in concentration, persistence and pace. (T. at 118.)

On October 11, 2001, E.L. was suspended from school for three days for harassing

students and disrupting his class.  (T. at 162.)

The foregoing evidence shows that Plaintiff met her burden of producing evidence showing that E.L. met the requirements of Listing 112.11.  The ALJ, however, did not apply that evidence to the law.  As discussed above, when evaluating whether a claimant's impairments meet or equal a Listing, the ALJ must refer to the specific criteria set forth in the Listing.  *See, e.g., Morales v. Barnhart*, 218  F. Supp 2d 450, 459-460 (S.D.N.Y. 2002).  The ALJ's decision does not mention Listing 112.11 or apply any of the evidence to the requirements of the Listing.  By failing to discuss the Listing,  the ALJ failed to apply the correct legal standards.

Moreover, the ALJ's decision is not supported by substantial evidence.  The ALJ noted that:

> the claimant's teacher reports ... his behavior problems with peers and adults.  However, when she was asked to quantify the behaviors by use of a questionnaire, it was noted that the most frequently given answer was "seldom" with regard to difficulty interacting with peers and adults.  She did mention that his behavior had improved considerably after the claimant was started on medication.

(T. at 17-18.)

The ALJ completely misstated the teacher's responses to the questionnaire.  "Seldom" was not a possible response on the questionnaire, and the teacher did not use it.  Rather, regarding E.L.'s ability to interact with peers and adults, the teacher responded that E.L. "often" (defined by the questionnaire as between ½ and 2/3 of the time) fought with and provoked his peers and often was disruptive and spoke out of turn.  (T. at 210.)  She reported that E.L. often had troubled peer relationships and bothered other children.  (T. at 213.)   She reported that E.L. *sometimes* (defined by the questionnaire's instructions as "less than ½ the time") had trouble

10

getting along with other children, getting along with authority figures, sharing and taking turns, following rules, making or keeping friends, being argumentative with teachers or others, defying authority, maintaining his temper, lying or blaming others for mistakes, demanding attention from others, joining others in games, withdrawing or isolating himself, and being disciplined. (T. at 210.)  The teacher noted that "prior to medication, many of these would be 'often'."  Thus, the ALJ's decision was not based on substantial evidence.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: January 28, 2008
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

   [2]   Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).